# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

|   |   |
|---|---|
| IMAGENETIX, INC., on behalf of itself and all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>WALGREEN CO.,<br><br>    Defendant. | No. 11 CV 8277<br>Judge James B. Zagel |

## MEMORANDUM OPINION AND ORDER

Plaintiff Imagenetix, Inc. brings a three-count complaint against Walgreen Co., alleging fraud, breach of contract, and unjust enrichment. Plaintiff also seeks to represent a class of manufacturers alleged to have been similarly ill-treated by Walgreen Co. Defendant seeks to have the substantive counts dismissed and the class allegation stricken. For the following reasons, the motion as to the counts is granted without prejudice. The motion to strike the class allegations is denied, without prejudice to the defendant raising the argument anew if faced with an amended complaint.

## BACKGROUND

Plaintiff Imagenetix, Inc. is a Nevada corporation with its principal place of business in San Diego, California. Imagenetix develops and manufactures nutritional supplements, among other things. The product at the center of this lawsuit is known as Celadrin, a supplement that "promotes healthy joints." Defendant Walgreen Co. is an Illinois corporation that does business as the large drugstore chain "Walgreens."

According to the complaint, from January of 2007 through the first half of 2011, Imagenetix sold Celadrin to Walgreens for retail sale. In late 2010, Walgreens informed Imagenetix that Walgreens would not continue to sell Celadrin unless Imagenetix participated in a Walgreens program called "Register Rewards."

Under Register Rewards, when a customer purchases certain items being promoted by the manufacturer, a machine installed by a third party (Catalina Marketing) prints out coupons at the point of sale that are targeted to the customer based on the particular items the customer has purchased. The manufacturer agrees to reimburse Walgreens for the face value of each coupon issued and redeemed in connection with the sale of their promoted product. The manufacturer also agrees to pay certain fees. Walgreens maintains a set of Coupon Policy Guidelines which govern the Register Rewards program.

The complaint alleges that Walgreens manipulated Register Rewards to commit a large-scale fraud. According to the complaint, after Walgreens threatened to discontinue selling Celadrin, Imagenetix agreed to participate in Register Rewards for a one-week period: March 20 to March 26, 2011. During that period, consumers would be issued a $10 Register Rewards coupon if they purchased one or more 60-capsule bottles of Celadrin at a purchase price of $10. Each coupon expired two weeks after the time of purchase and could only be applied to future purchases of eligible items selling for over $10.

When the promotion was over, according to the complaint, Walgreens represented to Imagenetix that it issued approximately 54,000 Register Rewards coupons related to the purchase of Celadrin and 52,039 of those were later redeemed by customers. Based on those redemptions,

Walgreens billed Imagenetix $533,000 for coupons purportedly redeemed plus $188,000 in associated fees.

The complaint goes on to assert that "[b]ecause of the extremely high redemption rate for its Register Rewards promotion, Imagenetix audited the program [and] Imagenetix's audit revealed wide-spread fraud by Walgreens."

Imagenetix also participated in a Walgreens program known as "Easy Saver" in September 2007. Under the Easy Saver program, Imagenetix offered a rebate of the entire purchase price of Celadrin, or $19.99. According to the allegations, Walgreens sought reimbursement for 32,057 rebates totaling $640,000.

Similar to the later Register Rewards program, the redemption rate was over ninety percent, prompting Imagenetix to audit the program. According to Imagenetix, the audit revealed that of the 186 rebate submissions they examined, 96 (or over half) "were improperly approved by Walgreens despite incomplete or inaccurate rebate submissions. The flaws included such things as missing original receipts (allegedly a requirement for the rebate) or receipts that reflected purchases of Celadrin outside of the promotional period. Imagenetix claims it shared the results of this audit, but Walgreens was ultimately "unwilling" to provide documentation supporting its rebates.

The complaint does not state when the audit took place. Regarding any payments Imagenetix made to Walgreens connected to the Easy Saver program, the complaint says only that "[o]n information and belief, Walgreens charged Imagenetix an amount in excess of the payments received by consumers."

**STANDARD OF REVIEW**

When considering a motion to dismiss under Rule 12(b)(6), a court must accept as true all facts alleged in the Amended Complaint and construe all reasonable inferences in favor of the plaintiff. *See Murphy v. Walker,* 51 F.3d 714, 717 (7th Cir. 1995). To state a claim upon which relief can be granted for most allegations, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but the plaintiff must allege facts that, when accepted as true, state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949(2009) (internal quotations omitted). When analyzing whether a complaint has met this standard, the "reviewing court [must] draw on its judicial experience and common sense." *Id.* at 1950. A claim has facial plausibility when the factual content in the pleadings allows the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *See id.* at 1949.

Allegations of fraud are subject to a heightened pleading requirement. Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." The heightened pleading therefore requires a complaint alleging fraud to contain more substance to survive a motion to dismiss as compared to a Rule 12(b)(6) motion based on another cause of action. *See Ackerman v. Nw. Mutual Life Ins. Co.,* 172 F.3d 467, 469 (7th Cir. 1999) (stating that Rule 9(b) forces "the plaintiff to do more than the usual investigation before filing his complaint"). A satisfactory fraud pleading must include "the who, what, when, where, and how: the first paragraph of any newspaper story." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990).

**ANALYSIS**

*Count I - Fraud (Illinois Law)*

The motion to dismiss the fraud claim is granted. To prove common law fraud, Plaintiff must plead the following elements: (1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement. *Tricontinental Indus. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 841 (7th Cir. 2007) (citing *Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 591 (Ill. 1996)). As described above, the elements must be described with particularity.

The first, second, and third elements here are well-pled. Plaintiff has provided sufficient specifics about what statements were false: namely, the billing statements from Walgreens to Plaintiff. These statements, according to Plaintiff, essentially inflated the redemption rate in order to prompt Plaintiff to overpay for the Register Rewards and Easy Saver programs. The second and third elements can be pled generally under Rule 9(b), and the complaint quite clearly alleges knowledge of the falsity and intent to induce.

Where the complaint falls flat is on reliance and damages. I take reliance first. As to the Register Rewards program, Paragraphs 14 and 15 illustrate the point. Paragraph 14 reads as follows:

> Following the week of the promotion, Walgreens represented to Imagenetix that it issued approximately 54,000 Register Rewards coupons related to the purchase of Celadrin and that 52,039 of those coupons were redeemed by customers. The redemption rate of over 95 percent was excessively high, especially considering the relatively short expiration period (*i.e.*, two weeks) for each Register Rewards coupon. Walgreens billed Imagenetix $533,000 for coupons purportedly

5

redeemed, plus $188,000 for scan down charges and a co-op charge related to the Register Rewards program.

It is this representation by Walgreens that Imagenetix claims was false. Even if true, however, Paragraph 15 not only fails to specify reliance, it comes close to pleading Plaintiff out of court on that element:

> Because of the extremely high redemption rate for its Register Rewards promotion, Imagenetix audited the program. Imagenetix analyzed the purportedly redeemed coupons that were sent to Imagenetix by Walgreens' coupon processor, NCH Marketing Services, Inc. ("NCH"). Each Register Rewards coupon has a fourteen-digit code with the store number, lane number, and the date and time the coupon was printed. Imagenetix's audit revealed wide-spread fraud by Walgreens.

The most likely interpretation of this paragraph is that Imagenetix was suspicious of Walgreens' alleged misrepresentation, and sought to check out Walgreens' claims for reimbursement. If so, Plaintiff did not rely on Walgreens' representations - false or otherwise - and thus could not prove common law fraud.[1]

But I must interpret the complaint in Plaintiff's favor and there is one interpretation that could save Plaintiff's case. This interpretation is that Plaintiff in fact paid Walgreens the full amount Walgreens had fraudulently demanded, and audited the program shortly after. If that is what Plaintiff is trying to say, then reliance may be present and the fraud complaint might plausibly be plead. I note that this interpretation only saves Plaintiff from a "with prejudice" dismissal.[2] The claim of fraud is dismissed because the fourth element is not plead with

---

[1] The complaint as to the Easy Saver program follows the same pattern, though the timing is even fuzzier because that promotional program is alleged to have taken place in 2007.

[2] When a plaintiff pleads themselves out of court, the common practice is for the court to dismiss the claim with prejudice. *See, e.g. Jackson v. Kane County*, 2010 U.S. Dist. LEXIS 6154, *10 (N.D. Ill. Jan. 26, 2010) (dismissal with prejudice where a plaintiff pled facts defeating his own claim); *see also McCauley v. City of Chicago*, 2009 U.S. Dist. LEXIS 86267, *12 - *13

sufficient particularity, but Plaintiff may attempt to amend the complaint to more clearly and specifically plead the reliance element.

The fifth element, damages from the reliance, is also far too vague to meet the strictures of Rule 9. Regarding the alleged damages, the complaint says two things. First, in Paragraph 23, regarding the Easy Saver program, the complaint says: "[o]n information and belief, Walgreens charged Imagenetix an amount in excess of the payments received by consumers." This statement is problematic for two reasons. One, it is vague as to whether Walgreens simply presented a bill or whether Imagenetix actually paid the bill. If only the former, then Imagenetix did not rely on the statements and was not damaged. If the latter, more particularity is required. This is because allegations made "on information and belief" are inappropriate in the fraud context, unless the relevant facts are not accessible to the plaintiff and the plaintiff provides grounds for his suspicions. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 442-43 (7th Cir. 2011). The exception to the general rule does not apply here, because any payments Plaintiff has made would obviously be known to them.

The second statement regarding damages is as follows: "[a]s a result of Walgreens' misconduct related to the Register Rewards, Easy Saver, and other programs, Imagenetix and other manufacturers have overpaid Walgreens." It is entirely unclear what Plaintiff paid, when it paid, and under which of the programs. Rule 9 commands that Plaintiff provide more detail about how much it paid and when it paid those amounts pursuant to which programs. Plaintiff

---

(N.D. Ill. Sept. 18, 2009) (citing *Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008)) (same).

must also show in its pleading how its reliance on Walgreens' false statements led to the payments.

The fraud allegations are dismissed for failure to plead sufficient particularities under Rule 9. For the reasons stated above, the dismissal is without prejudice.

*Count II - Breach of Contract (Illinois Law)*

The motion to dismiss the breach of contract claim is also granted. "In Illinois, as elsewhere, a breach-of-contract claim requires: (1) an offer and acceptance; (2) consideration; (3) definite and certain terms; (4) performance by the plaintiff of all required conditions; (5) breach; and (6) damages caused by the breach." *Cogswell v. CitiFinancial Mortg. Co.*, 624 F.3d 395, 398 (7th Cir. 2010) (citing Illinois and Seventh Circuit opinions). The first three elements are sometimes collapsed into one, namely "the existence of a valid and enforceable contract." *See, e.g. Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010).

A breach of contract claim is subject to the notice pleading requirements of Rule 8. But even a notice pleading must contain enough factual allegations "to raise a right to relief above the speculative level." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). That is, "legal conclusions and conclusory allegations merely reciting the elements of the claim" are insufficient, standing on their own. *Virinich v. Vorwald*, 664 F.3d 206, 213 (7th Cir. 2011).

Under the breach of contract claim, Plaintiff includes the conclusory allegation that "Walgreens entered into valid, binding, and enforceable agreements with Imagenetix and other class members." Beyond that, Plaintiffs refer generally to the Register Rewards and Easy Saver programs and to certain "Coupon Guidelines" promulgated by Walgreens. But it is not clear from the factual background section of the complaint how those programs created binding

agreements. For instance, Imagenetix states that "From November 2010 through February 2011, Walgreens and Imagenetix (through its broker) discussed Imagenetix's participation in the Register Rewards program . . . . Imagenetix subsequently agreed to participate . . . ." This appears to be the complaint's only reference to an offer and acceptance. Regarding consideration and definite and certain terms, there is nothing. Even under the notice pleading standard of Rule 8, this is not enough.

The motion to dismiss the breach of contract claim is granted, without prejudice.

*Count III - Unjust Enrichment (Illinois Law)*

Plaintiff's unjust enrichment claim fails because it rests on the allegations of fraud pled earlier in the complaint. The Seventh Circuit met this issue squarely in *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 447-48 (7th Cir. 2011). In *Pirelli*, the Seventh Circuit upheld the district court's dismissal of a fraud claim on the basis that the allegations were pled with insufficient particularity. *See id.* at 447. The court also upheld the district court's dismissal of an unjust enrichment claim. *See id.* at 448. In so doing, the court emphasized that because the unjust enrichment claim was based on the same allegations of fraudulent conduct as the fraud pleading, it must meet the strictures of Rule 9 right along with fraud allegations. *Id.* Therefore, because the fraud pleadings were insufficient, so was the unjust enrichment claim.

*Pirelli* compels dismissal of the unjust enrichment claim here. Count III of this complaint incorporates all of the prior paragraphs of the complaint by reference and then simply states in conclusory fashion that the conduct described in those paragraphs has resulted in Walgreens being unjustly enriched. Those paragraphs are replete with references to fraud and fraudulent

9

conduct (albeit without the requisite specificity). It is true that the *Pirelli* court made an exception for cases in which an alternative theory is pled to support a claim of unjust enrichment. *Id.* And here, Plaintiff did attempt to say that its unjust enrichment claim was pled in the alternative. The problem is, Imagenetix offered no alternative theory to support the claim. It was the prior references to fraudulent conduct on which Plaintiff's unjust enrichment theory plainly rested. As the Seventh Circuit stated in *Pirelli*, "it is allegations of fraud, not claims of fraud, to which Rule 9(b) applies." *Id.* With fraud as the underlying theory to the unjust enrichment claim, it must fail along with the claim of fraud.

Count III is dismissed without prejudice.

*Class Allegations*

Defendant urges dismissal of Plaintiff's class allegations. Because Plaintiff has not sufficiently plead any cause of action, it is too difficult to tell whether or not any such action could be maintained on behalf of a class. The motion to dismiss the class allegations is denied, but without prejudice to Defendant's making the motion anew when (and if) Plaintiff amends its complaint.

**CONCLUSION**

For the foregoing reasons, the motion to dismiss Counts I, II, and III is GRANTED, without prejudice. The motion to strike the class allegations is DENIED, also without prejudice to the defendant later raising the argument.

ENTER:

*James B. Zagel*
James B. Zagel
United States District Judge

DATE: April 12, 2012